**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT SNOW,<br><br>                    Plaintiff,<br><br>     v.<br><br>IST MANAGEMENT SERVICES, INC.,<br>HAL BLACKMAN, LORI MITCHUM,<br>JOHN/JANE DOES 1-10, fictitious<br>person; ABC CORP. 1-10, fictitious<br>entities,<br><br>                    Defendants. | **NOTICE OF REMOVAL**<br><br><br>Civil Action Case No.:  3:24-cv-4169 |

**TO:    HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT**

**ON NOTICE TO:**

Peter D. Valenzano, Esq.
McOmber, McOmber & Luber, PC
54 Shrewsbury Avenue
Red Bank, New Jersey 07701

Clerk
Superior Court of New Jersey
Monmouth County
71 Monument Street
Freehold, New Jersey 07728

Clerk
Superior Court of New Jersey
Hughes Justice Complex
CN-971
Trenton, New Jersey 08625

**HONORABLE JUDGES:**

Defendants, IST Management Services, Inc. ("IST Management"), Hal Blackman ("Mr.

Blackman") and Lori Mitchum ("Ms. Mitchum" and collectively "Defendants") notice the removal

of this action pursuant to 28 U.S.C. §1331, §1441 and § 1446 *et seq*., to the United States District Court for the District of New Jersey, and as grounds therefore show as follows:

## TIMELINESS OF REMOVAL

1.      On February 15, 2024, Plaintiff Robert Snow ("Plaintiff") filed a civil action against Defendants in the Superior Court of New Jersey, Monmouth County, entitled *Snow v. IST Management Services, Inc.*, *et. al. Docket No. MON-L-593-24* ("the State Court Action"). (*See Summons and Complaint*; true and correct copies of which are attached hereto as *Exhibit A*).

2.      On February 26, 2024, Plaintiff served Defendants with a copy of the Summons and Complaint in the State Court Action.

3.      Plaintiff's Complaint is the only pleading related to this matter.

4.      Under 28 U.S.C. §§1446(a), 1447(b), and 1449, a copy of all pleadings, process, orders, and other papers received by Defendants have been attached as *Exhibit A*.

5.      This Notice of Removal has been timely filed within 30 days of valid service, under 28 U.S.C. §1446(b) and *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

## VENUE

6.      The Superior Court of New Jersey, Monmouth County, is located in the District of New Jersey.

7.      Therefore, the venue for removal is proper because it is the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).

## BASIS FOR REMOVAL

8.      As set forth below, the Court has original jurisdiction over this action under 28 U.S.C. §1332 because complete diversity exists between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

9.    A notice of removal needs only to include plausible allegations establishing the existence of federal jurisdiction and is not required to be supported by evidentiary submissions. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014).

10.    For diversity purposes, an individual is a citizen of the state in which he or she is domiciled with the intent to remain. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008).

11.    To be domiciled in a state, a person must reside there and intend to remain indefinitely. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300-01 (3d Cir. 1972).

12.    A person may only have one domicile, and, thus, may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914).

13.    Based upon Plaintiff's Complaint, information, and belief, Plaintiff is an individual who currently resides in and is domiciled in New Jersey and is, therefore, a citizen of New Jersey for purposes of 28 U.S.C. §1332.

14.    For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of the state in which it was incorporated and where it has its principal place of business. 28 U.S.C. §1332(c)(1).

15.    A corporation's principal place of business is its "nerve center" – the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

16.    Defendant IST Management is a corporation organized and existing under the laws of the State of Georgia. Its principal place of business is in the State of Georgia. Thus, Defendant IST Management is a citizen of Georgia for purposes of 28 U.S.C. §1332.

17.    Defendant Mr. Blackman is an individual who currently resides in and is domiciled in Georgia and is, therefore, a citizen of Georgia for purposes of 28 U.S.C. §1332.

18.    Defendant Ms. Mitchum is an individual who currently resides in and is domiciled in Georgia and is, therefore, a citizen of Georgia for purposes of 28 U.S.C. §1332.

19.    "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, ***the citizenship of defendants sued under fictitious names shall be disregarded.***" 28 U.S.C. §1441(b)(1) (emphasis added); *see also Ortiz v. Richmond Elevator Co., Inc.,* No. 15–672 (CCC), 2015 WL 5945433, at *6 (D.N.J. Sept. 29, 2015) (*citing* 28 U.S.C. § 1441(b)(1)); *see also Harris v. Bristol–Myers Squibb Co.*, No. 11–6004 (FLW), 2012 WL 1243260, at *2 n.9 (D.N.J. Apr. 12, 2012) (holding that "the presence of fictitious defendants has no bearing on this Court's jurisdictional analysis" when diversity of citizenship is being addressed, and citing 28 U.S.C. § 1441(b)(1)); *Scott v. Dollar Tree Stores, Inc.*, No. CV 17-9168 (JLL), 2017 WL 6447872, at *3 (D.N.J. Dec. 18, 2017)(same).

20.    Accordingly, diversity of citizenship, for purposes of 28 U.S.C. §1332, existed between all parties when Plaintiff commenced the State Court Action and as of the time Defendants filed this Notice of Removal.

21.    The amount in controversy requirement of 28 U.S.C. §1332 is also met, assuming the truth of the allegations in the Complaint and the validity of Plaintiff's claims.

22.    Although Defendants vehemently deny the allegations in the Complaint and contend that Plaintiff is not entitled to any recovery whatsoever, the only relevant question at this stage is whether Plaintiff's Complaint places in controversy an amount above the amount specified by 28 U.S.C. §1332.

23. The Complaint filed by Plaintiff alleges discrimination in violation of New Jersey's Law Against Discrimination ("NJLAD").

24. Plaintiff demands judgment for compensatory damages, general and special damages, punitive damages, attorneys' fees, interest, cost of suit, attorney's fees, and such further relief as the Court may deem just and equitable.  (*See Cmpl. at pp. 10-14.*)

25. According to a reasonable reading of the Complaint and a preponderance of the evidence, Plaintiff's demand and the amount in controversy is more than $75,000. *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) (where plaintiff does not set a limit for damages, the Court should make a reasonable reading of the value of the claim that plaintiff has asserted and come to an independent valuation of the amount plaintiff has claimed).

a. *First*, Plaintiff seeks economic damages based on his allegations that as a result of his employment being terminated, he is entitled to be made whole for any pay he would have received had his employment not been terminated, including but not limited to lost and future lost earnings.  (*See Cmpl. at pp. 10-14.*)

b. *Second*, Plaintiff seeks non-compensatory damages, which case law suggests alone can reasonably be anticipated to exceed the jurisdictional minimum. *See Clark v. J.C. Penney Corp.*, Civ. A. No. 08-4083, 2009 WL 1564175, at *4 (D.N.J. June 1, 2009) (noting that damages for pain and suffering "could be great [as] .... juries are basically unrestricted in their ability to award pain and suffering damages").

c. *Third*, Plaintiff seeks attorneys' fees, which must be considered when determining whether the amount in controversy is met. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (holding that "attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action"); *Raspa v. The*

*Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (stating that attorneys' fees "alone can exceed six figures."). Because attorney's fees are recoverable under the NJLAD, they are necessarily part of the amount in controversy.

d.    *Fourth*, the Plaintiff seeks punitive damages. "The Court must consider the plaintiffs' demand for punitive damages when calculating the amount in controversy and can aggregate these damages with the requested compensatory damages." *Goralski v. Shared Techs., Inc.*, Civ. A. No. 09-2461, 2009 WL 2460752, at *5 (D.N.J. Aug. 7, 2009); *see also Golden v. Golden*, 382 F.3d 348, 355 (3d. Cir. 2004), *abrogated on other grounds by Three Keys Ltd. v. SR Util. Holding Co*, 540 F.3d 220, 226 (3d Cir. 2008) (noting that jurisdictional amount in controversy may be satisfied because the complaint seeks punitive damages); *Raspa v. Home Depot*, 533 F.Supp.2d 514, 522 (D.N.J. 2007) (noting that even on its own, "a request for punitive damages will generally satisfy the amount in controversy requirement.").

26.    Aggregating these amounts, as is appropriate for evaluating removal based on diversity jurisdiction, the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

27.    Accordingly, the grounds for diversity jurisdiction are satisfied, and this Court has jurisdiction over this matter under 28 U.S.C. §1332.

## CONCLUSION

28.    Defendants have heretofore sought no similar relief.

29.    To date, Defendants have not filed a responsive pleading in the State Court Action, and no other proceedings have transpired in that action.

30.    By removing this matter, Defendants do not waive or intend to waive any defense they otherwise might possess.

31.     In accordance with 28 U.S.C. §1446, copies of this Notice of Removal have been served upon Plaintiff and filed with the Clerk of the Superior Court of New Jersey and the Clerk of the Superior Court in Monmouth County, New Jersey.

**WHEREFORE**, Defendants IST Management Services, Inc., Hal Blackman, and Lori Mitchum pray that this Honorable Court will take jurisdiction of this action and issue all necessary orders and processes to remove it from the Superior Court of New Jersey, County of Monmouth, to the United States District Court for the District of New Jersey.

Respectfully Submitted,

By: */s/ Christopher J. Capone, Esq.*
Christopher J. Capone
**FISHER & PHILLIPS LLP**
430 Mountain Ave., Suite 303
Murray Hill, NJ 07974
Tel:  908.516.1050
ccapone@fisherphillips.com
Attorneys for Defendants

Dated:  March 25, 2024

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I, Christopher J. Capone, Esq., counsel for Defendants IST Management Services, Inc., Hal Blackman, and Lori Mitchum, certify that the matter in controversy is not the subject of any other action pending in any court or any pending arbitration or administrative proceeding and that no other action or arbitration is contemplated.

By: <u>*/s/ Christopher J. Capone, Esq.*</u>
Christopher J. Capone
**FISHER & PHILLIPS LLP**
430 Mountain Ave., Suite 303
Murray Hill, NJ 07974
Tel:  908.516.1050
ccapone@fisherphillips.com
Attorneys for Defendants

Dated:  March 25, 2024

## CERTIFICATE OF SERVICE

I certify that on March 25, 2024, the foregoing Notice of Removal was electronically filed with this Court.  I also certify that on March 25, 2024, a true and correct copy of the foregoing Application was served via first-class mail, postage prepaid, upon:


Peter D. Valenzano, Esq.
McOmber, McOmber & Luber, PC
54 Shrewsbury Avenue
Red Bank, New Jersey 07701


Clerk
Superior Court of New Jersey
Monmouth County
71 Monument Street
Freehold, New Jersey 07728

Clerk
Superior Court of New Jersey
Hughes Justice Complex
CN-971
Trenton, New Jersey 08625


By: */s/ Christopher J. Capone, Esq.*
     Christopher J. Capone
     **FISHER & PHILLIPS LLP**
     430 Mountain Ave., Suite 303
     Murray Hill, NJ 07974
     Tel:  908.516.1050
     ccapone@fisherphillips.com
     Attorneys for Defendants

# *EXHIBIT A*

Attorney(s):            Peter D. Valenzano, Esq.
Attorney Id No.:     037892010
Law Firm:         McOmber McOmber & Luber, P.C.
Address:          54 Shrewsbury Avenue
                     Red Bank, New Jersey 07701

Telephone No.:     (732) 842-6500
Fax No.:          (732) 530-8545
E-mail:           pdv@njlegal.com
Attorney(s) for Plaintiff(s): Robert Snow

| | |
|---|---|
| ROBERT SNOW,<br><br>                           Plaintiff(s)<br><br>vs.<br><br>IST MANAGEMENT SERVICES, INC.; HAL BLACKMAN; LORI MITCHUM; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br>                         Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br><br>Law DIVISION<br><br>MONMOUTH COUNTY<br><br>DOCKET NO.:  MON-L-593-24<br><br>CIVIL ACTION<br><br>**Summons** |

**FROM THE STATE OF NEW JERSEY**

To the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is provided and available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

Printed by ALL-STATE LEGAL®<br>A Division of ALL-STATE International, Inc.<br>www.aslegal.com  800.222.0510  Page 1

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is provided and available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

Date:  February 16, 2024

/s/ Michelle M. Smith

*Clerk of the Superior Court*

Name of Defendant to be Served:  Lori Mitchum

Address of Defendant to be Served:  1341 Moreland Ave, SE Suite 2000, Atlanta, GA 30316

31 - Summons - Law or Chancery Divisions
Superior Court. Appendix XII-A. CN 10153.
Rev. 11/14   P11/18

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 2

```
MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1270
FREEHOLD          NJ 07728
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (732) 358-8700
COURT HOURS  8:30 AM - 4:30 PM


                         DATE:   FEBRUARY 14, 2024
                         RE:     SNOW ROBERT  VS IST MANAGEMENT SERVI CES, INC.
                         DOCKET: MON L -000593 24


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON KATHLEEN A. SHEEDY


     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      003
AT:  (732) 358-8700 EXT 87549.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:
                                     ATT: PETER D. VALENZANO
                                     MCOMBER MCOMBER & LUBER, PC
                                     54 SHREWSBURY AVE
                                     RED BANK          NJ 07701


ECOURTS
```

Christian V. McOmber, Esq. – NJ ID #012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID #037892010
  pdv@njlegal.com
Christian J. Fechter, Esq. – NJ ID #386732021
  cjf@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
*Attorneys for Plaintiff, Robert Snow*

| ROBERT SNOW, Plaintiff, v. IST MANAGEMENT SERVICES, INC.; HAL BLACKMAN; LORI MITCHUM; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals), Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION MONMOUTH COUNTY DOCKET NO.: Civil Action **COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |
|---|---|

Plaintiff, Robert Snow ("Plaintiff"), by way of Complaint against Defendant IST Management Services, Inc. ("Defendant IST"), Defendants ABC Corporations 1-5 (fictitious names describing presently unknown business entities) (along with "Defendant IST" collectively referred to as the "Corporate Defendants" or the "IST Defendants"), and Defendant Hal Blackman ("Defendant Blackman"), Defendant Lori Mitchum ("Defendant Mitchum"), and Defendants John Does 1-5 (fictious names describing presently unidentified individuals) (along with "Defendant Blackman," and "Defendant Mitchum," collectively referred to as the "Individual Defendants"), alleges as follows:

## INTRODUCTION

Plaintiff Robert Snow, a former Regional Vice President for the IST Defendants, was subjected to disability discrimination and retaliation in a brazen violation of New Jersey's broad and liberally construed Law Against Discrimination, N.J.S.A. 10:5-1, et seq., (hereinafter referred to as the "NJLAD"). In approximately June 2023, Plaintiff was diagnosed with kidney cancer, and his physicians scheduled an emergency surgery. This surgery took place on July 13, 2023, and required Plaintiff to take a brief leave of absence to convalesce and recover. Ever the consummate professional, Plaintiff kept the IST Defendants, and his respective managers, informed of his prognosis and expected return to work date. Plaintiff returned to work on Monday, July 24, 2023. He thereafter informed management he may require occasional time off to obtain post-surgical treatment. Unfortunately, on September 25, 2023, Plaintiff fell ill and was admitted to the emergency room. His physicians informed him the cancer had metastasized from his kidney to his lungs and referred Plaintiff to an oncologist.

On October 2 and 3, 2023, Plaintiff again was not feeling well and called out of work. On October 4, 2023, the CEO, Defendant Blackman terminated Plaintiff's employment on the dubious pretext of performance issues. Plaintiff was shocked because he had not received any indication from the IST Defendants that his performance was unsatisfactory or that his job was in jeopardy. In short, instead of accommodating Plaintiff's need for time off due to his disability, and potential need for future disability leave, the IST Defendants found it easier to simply terminate Plaintiff's employment. Fortunately, the NJLAD provides a remedy for employees subjected to such discrimination and retaliation. Accordingly, Plaintiff brings this lawsuit to assert his right to work in an environment free from unlawful discrimination and retaliation.

2

## PARTIES

1.     Plaintiff is a domiciliary of the State of New Jersey presently residing in Eatontown, New Jersey, and at all times relevant hereto was employed by Defendant IST as a Regional Vice President.

2.     Defendant IST is a Georgia corporation engaged in facilities management and IT services. Defendant IST maintains a principal place of business located at 1341 Moreland Ave, SE Suite 2000, Atlanta, GA 30316. At all times relevant hereto, Defendant IST is a single and/or joint "employer" as defined under the NJLAD, and directly employed Plaintiff and all Individual Defendants.

3.     Defendant Blackman was, at all times relevant herein, the CEO of Defendant IST. Accordingly, this claim is brought by Plaintiff against Defendant Blackman in his individual capacity and/or as an agent or servant of Corporate Defendants acting during the course of his employment who aided and abetted the discrimination, harassment, and retaliation referenced herein. At all times relevant hereto, Defendant Blackman is an "employer" as defined under the NJLAD.

4.     Defendant Mitchum was, at all times relevant herein, a Vice President of Human Resources at Corporate Defendants. Accordingly, this claim is brought by Plaintiff against Defendant Mitchum in her individual capacity and/or as an agent or servant of Corporate Defendants acting during the course of her employment who aided and abetted the discrimination, harassment, and retaliation referenced herein. At all times relevant hereto, Defendant Mitchum is an "employer" as defined under the NJLAD.

5.     Upon information and belief, Defendants ABC Corporations 1-5 are currently unidentified business entities which acted in concert with Corporate Defendants, and/or currently

3

undefined business entities responsible for the creation and/or implementation of anti-retaliation policies of Corporate Defendants, and/or currently unidentified business entities which may have liability for the damages suffered by Plaintiff under any theory advanced herein.

6. Upon information and belief, Defendants John Does 1-5 are currently unidentified individuals who have acted in concert, aided and abetted, were complicit in, engaged in, and/or encouraged conduct with regard to the instant matter, and/or were responsible for the creation and/or implementation of anti-retaliation policies of Corporate Defendants and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

## FACTS COMMON TO ALL CLAIMS

7. Corporate Defendants claim, at all times relevant hereto, they had in effect at their facilities and locations within the State of New Jersey and elsewhere specific policies prohibiting workplace discrimination, harassment, and/or retaliation.

8. Corporate Defendants claim, at all times relevant hereto, they had in effect at their facilities and locations within the State of New Jersey and elsewhere a zero-tolerance policy when it comes to workplace discrimination, harassment, and/or retaliation.

9. Corporate Defendants claim, at all times relevant hereto, they had in effect at their facilities and locations within the State of New Jersey and elsewhere policies and procedures requiring employees who believe they were the victim of discrimination and/or retaliation to report the behavior to supervisory and management staff.

10. Corporate Defendants claim, at all times relevant hereto, they had in effect at their facilities and locations within the State of New Jersey and elsewhere policies and procedures

4

committing them to engage in a timely and effective investigation of complaints of discrimination and/or retaliation brought to their attention by employees.

11.     In or around May 2023, Plaintiff commenced employment with Corporate Defendants as a Regional Vice President. Throughout his employment, Plaintiff performed his job responsibilities competently and diligently, loyally committed to the IST Defendants and the clients they serve.

12.     Unfortunately, Plaintiff's employment came to a grinding halt when he was diagnosed with cancer, underwent surgery, and informed Corporate Defendants he may need time off to obtain cancer treatment.

**A.      Plaintiff Is Diagnosed With Kidney Cancer And Undergoes Surgery.**

13.     Shortly after commencing his employment with the IST Defendants, in or around late June 2023, Plaintiff was diagnosed with kidney cancer. Specifically, Plaintiff's physicians diagnosed Plaintiff with Renal Cell Carcinoma and informed Plaintiff he required surgery to treat same.

14.     Plaintiff kept his supervisor, Greg Caraway ("Mr. Caraway"), and the IST Defendants informed of his diagnosis and need for surgery as part of his treatment.

15.     Initially, the company feigned sympathy for Plaintiff's diagnosis.

16.     On or around July 17, 2023, Plaintiff underwent surgery; specifically, a Left Nephrectomy.

17.     Plaintiff's physicians had initially recommended a two-week recovery period, however, as Plaintiff was eager to return to work, on or around July 24, 2023, Plaintiff returned to work.

5

18.     While Plaintiff was out of work, and despite the fact that he was clearly out of work due to his illness, Defendant Mitchum told Plaintiff he did not have any available personal time to use, but could take unpaid time off.

19.     Thereafter, Plaintiff returned to work without issue.

**B.    Plaintiff's Cancer Metastasizes, Requiring Further Treatment, And Instead Of Accommodating Plaintiff's Disability, Defendants Terminate Plaintiff's Employment.**

20.     On or around September 25, 2023, Plaintiff has to be rushed to the emergency room for treatment. Always the consummate professional, Plaintiff had his wife, Madelyn Snow ("Mrs. Snow"), text Mr. Caraway to inform him that Plaintiff would be out of work and in the emergency room.

21.     Unfortunately, during the September hospital visit, Plaintiff's physicians informed Plaintiff the cancer had metastasized from his kidney to his lungs and referred Plaintiff to an oncologist for further treatment. Again, Plaintiff kept the IST Defendants informed of his prognosis, including a likely need for future days off to obtain treatment, as necessary.

22.     Due to his illness, Plaintiff was forced to take off work on October 2 and 3, 2023. The very next day, out of the blue, Mr. Caraway informed Plaintiff he was going to lose his job and told Plaintiff to call Defendant Blackman to find out why.

23.     That afternoon, Plaintiff called Defendant Blackman who informed Plaintiff the company was "Sorry to let him go, but they had to move forward without him because he did not hit his quota." Plaintiff was shocked, as this was the first instance anybody from IST had expressed any disappointment or concern with his job performance. In fact, before October 4, 2023, Plaintiff did not receive any indication whatsoever that his position was in jeopardy.

6

24. Further, Defendants were well aware that Plaintiff had recently been diagnosed with cancer, required surgery, and that his cancer had recently metastasized. However, instead of providing Plaintiff with support during his time of need, Defendants terminated Plaintiff's employment the day after Plaintiff required two days off due to his disability, stripping Plaintiff not only of his dignity, but of his essential health insurance benefits.

25. Accordingly, as the IST Defendants were aware that Plaintiff's cancer had recently metastasized, instead of accommodating Plaintiff's disability, including potential further days off work to obtain treatment, Defendants simply terminated Plaintiff's employment.

26. The IST Defendants' alleged justification for Plaintiff's termination was clearly pretextual, as Plaintiff had never received any prior indication that his job was in jeopardy. Further, Defendants were well aware that Plaintiff had to miss time due to his disability to obtain treatment, thereby affecting his sales figures. However, instead of providing Plaintiff with any support or assistance, Defendants simply terminated his employment.

27. Because of the joint and several acts and omissions of the Corporate Defendants, Individual Defendants, John Does (1-5), and ABC Corporations (1-5), Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present, and future.

28. Because of the joint and several acts and omissions of the Corporate Defendants, Individual Defendants, John Does (1-5), and ABC Corporations (1-5), Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, and anxiety, causing him mental and emotional anguish and dysfunction and physical manifestations of same, including, but not limited to, nightmares, inability to sleep, weight loss, headaches, panic attacks,

7

crying, negative thoughts, nervousness, anxiousness, anxiety attacks, upset stomach, and stomach pains, all or some of which may be permanent.

## COUNT ONE

## NJLAD – DISPARATE TREATMENT AND UNLAWFUL TERMINATION DUE TO DISABILITY

29.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

30.     The treatment received from Individual Defendants, Corporate Defendants, ABC Corporations 1-5 and John Does 1-5, jointly or severally, violates the NJLAD which prohibits unlawful employment discrimination against any person because of race, religion, age, gender, handicap, marital status, national origin, sexual orientation, etc.

31.     Plaintiff's medical condition(s) fit the definition of handicap under the NJLAD.

32.     The above-described conduct would not have occurred but for Plaintiff's disability.

33.     Defendants did not have an effective anti-discrimination policy in place, Defendants have not maintained an anti-discrimination policy that is current and effective, and Defendants' anti-discrimination policy existed in name-only.

34.     Defendants did not maintain useful formal and information complaint structures for victims of discrimination, harassment, or retaliation.

35.     Defendants did not properly train their supervisors and/or employees on the subject of discrimination, harassment, and retaliation.

36.     Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of the policies and complaint structures.

37.     Defendants did not have a commitment from the highest levels of management that discrimination and harassment will not be tolerated.

8

38.    As a result of the above harassing and discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and experiences significant economic damages.

39.    As the employer and/or supervisor of the Plaintiff, Corporate Defendants are vicariously, strictly, and/or directly liable to the Plaintiff pursuant to the NJLAD in that the affirmative acts of discrimination committed by the Individual Defendants occurred within the scope of his employment; allowing the Individual Defendants to control the day-to-day working environment; and/or Corporate Defendants were deliberately indifferent, reckless, negligent and/or tacitly approved the hostile work environment; and/or Corporate Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of discrimination in the workplace; and/or by having actual knowledge of the discrimination of Plaintiff and failing to promptly and effectively act to stop it.

40.    Corporate Defendants aided, abetted, incited, compelled, and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce the Individual Defendants to commit acts and omissions that were in direct violation of the NJLAD by committing affirmatively discriminatory and retaliatory acts towards Plaintiff in clear violation of its supervisory duties to halt or prevent harassment, subjecting Corporate Defendants to liability to Plaintiff pursuant to N.J.S.A. 10:5-12(e).

41.    Individual Defendants aided, abetted, incited, compelled, and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce the Defendants to commit acts and omissions that were in direct violation of the NJLAD by committing affirmatively discriminatory and retaliatory acts towards Plaintiff in clear violation of its supervisory duties to halt or prevent

9

harassment, subjecting Individual Defendants to liability to Plaintiff pursuant to N.J.S.A. 10:5-12(e).

42.     As a proximate cause of the joint and several unlawful acts and omissions of the Defendants described at length herein, Plaintiff was terminated from his position of employment with Corporate Defendants.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJLAD, punitive damages, pre-and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.     Reinstatement of employment and all benefits;
B.     Back pay and benefits;
C.     Front pay and benefits;
D.     Compensatory damages;
E.     Consequential damages;
F.     Reinstatement;
G.     Punitive damages;
H.     Prejudgment interest and enhancements to off-set negative tax consequences;
I.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.     Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
K.     Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.     Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.     Ordering Defendants to undergo anti-discrimination training;
N.     Ordering Defendants to undergo anti-retaliation training;
O.     Ordering Defendants to undergo anti-harassment training;
P.     Ordering Defendants to undergo workplace civility training;
Q.     Ordering Defendants to undergo bystander intervention training;

10

R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z. Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

## NJLAD – DISABILITY DISCRIMINATION: FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

43. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

44. The conduct of Defendants as detailed above constitutes disability discrimination, specifically the failure to reasonably accommodate disabled persons, and the failure to engage in the interactive process required by New Jersey law.

45. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJLAD, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

11

A. Reinstatement of employment and all benefits;

B. Back pay and benefits;

C. Front pay and benefits;

D. Compensatory damages;

E. Consequential damages;

F. Reinstatement;

G. Punitive damages;

H. Prejudgment interest and enhancements to off-set negative tax consequences;

I. Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J. Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;

K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M. Ordering Defendants to undergo anti-discrimination training;

N. Ordering Defendants to undergo anti-retaliation training;

O. Ordering Defendants to undergo anti-harassment training;

P. Ordering Defendants to undergo workplace civility training;

Q. Ordering Defendants to undergo bystander intervention training;

R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z. Such other relief as may be available and which the Court deems just and equitable.

12

## COUNT THREE

## NJLAD – RETALIATION/IMPROPER REPRISAL

46. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

47. Plaintiff complained and/or protested against the continuing course of harassing, discriminatory, and retaliatory conduct set forth at length above. Defendants had knowledge about those complaints and/or protests.

48. As a direct result, Defendants took retaliatory action against Plaintiff, which is outlined above.

49. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliatory conduct in violation of the NJLAD pursuant to N.J.S.A. 10:5-12(d).

50. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained emotional and pecuniary damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, emotional distress damages, pre-and post-judgment interest, and attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A. Reinstatement of employment and all benefits;
B. Back pay and benefits;
C. Front pay and benefits;
D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;
H. Prejudgment interest and enhancements to off-set negative tax consequences;

13

I.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees, and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof require to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.     Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;

K.     Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.     Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.     Ordering Defendants to undergo anti-discrimination training;

N.     Ordering Defendants to undergo anti-retaliation training;

O.     Ordering Defendants to undergo anti-harassment training;

P.     Ordering Defendants to undergo workplace civility training;

Q.     Ordering Defendants to undergo bystander intervention training;

R.     Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.     Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.     Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.     Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.     Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.     Such other relief as may be available and which the Court deems just and equitable.

## DEMAND FOR DISCOVERY OF INSURANCE INFORMATION

Pursuant to Rule 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including,

14

but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Robert Snow*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: February 14, 2024

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, PETER D. VALENZANO, ESQUIRE, is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Robert Snow*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: February 14, 2024

15